IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY STEVEN BOWMAN,[1]

    Plaintiff,                                  No. CIV S-07-2164 FCD KJM P

    vs.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.                           ORDER

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983, challenging the application of the restrictive residence condition of California's "Jessica's Law," and onerous conditions of parole and high supervision levels flowing from his status as a registered sex offender. Defendants have filed a motion to dismiss or to stay pending resolution of the legal issues implicated by plaintiff's motion by the California Supreme Court. Plaintiff has filed two motions for injunctive relief along with a string of other motions and requests.

/////

/////

---

[1] Plaintiff also has used the last name "Boman." See, e.g., Compl., Exs. 1, 6.

1

I. <u>Motion To Disqualify The Magistrate Judge</u> (Docket No. 60)

Plaintiff seeks to withdraw his consent to the jurisdiction of the undersigned; he explains he would prefer to have the assigned district judge "hear the complaint." Because this action has not yet been reassigned to the undersigned for all purposes including trial, plaintiff may withdraw his consent without demonstrating good cause or extraordinary circumstances. <u>See</u> 28 U.S.C. § 636(c); <u>Dixon v. Ylst</u>, 990 F.2d 478, 480 (9th Cir. 1993) ("Once a civil case is referred to a magistrate judge under section 636(c), the reference can be withdrawn by the court only 'for good cause shown on its own motion, or under extraordinary circumstances shown by any party.'"). Accordingly, in the interests of justice, the court will grant plaintiff's request to rescind his consent, and his consent to the jurisdiction of the undersigned magistrate judge will be deemed withdrawn. Nevertheless, under the Local Rule 72-302(c)(17), the undersigned will continue to issue orders on non-dispositive motions and findings and recommendations on dispositive motions.

To the extent plaintiff seeks to disqualify the undersigned from further participation in this case, the motion is not well-taken. His reason for the request is his displeasure over the undersigned's denial of an earlier motion for a temporary restraining order. Under 28 U.S.C. § 144, if "the judge before whom the matter is pending has a personal bias or prejudice either against [the complaining party] or in favor of any adverse party, ... [she] shall proceed no further...." Under 28 U.S.C. § 455(a), "[a]ny ... judge ... shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." Under both recusal statutes, the substantive standard is whether there is a reasonable question about the judge's impartiality. <u>United States v. Hernandez</u>, 109 F.3d 1450, 1453 (9th Cir. 1997)

/////
/////
/////
/////

In <u>Liteky v. United States</u>, 510 U.S. 540 (1994), the Supreme Court held that alleged bias must usually stem from an extrajudicial source. <u>Id</u>. at 554-56. The Court said:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves ... they cannot possibly show reliance upon an extrajudicial source.... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible

<u>Id</u>. at 555 (internal citations omitted). In this case, the only basis for plaintiff's motion is the court's prior ruling. This is insufficient grounds to grant the motion.

II. <u>Plaintiff's Motion For Summary Judgment</u> (Docket No. 32)

Plaintiff has filed a two page motion for summary judgment, suggesting that the court has already ruled on the legal question presented in the complaint.

As the person seeking summary judgment, plaintiff bears the burden of showing the absence of genuine issues of material fact and doing so by the use of specific allegations and admissible evidence. <u>Adickes v. S.H. Kress</u>, 398 U.S. 144, 160 (1970); <u>Nissan Fire & Marine Ins. Co, Ltd. v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1105 (9th Cir. 2000). He has failed to point to those things in the record he believes support his request for the entry of judgment in his favor. <u>See generally</u> <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1029-31 (9th Cir. 2001) (any evidence a party wants the court to consider for a specific purpose should be brought to the attention of the court). This court is not required to comb the record in order to develop plaintiff's argument. <u>See</u> <u>Stuard v. Stewart</u>, 401 F.3d 1064, 1066-67 (9th Cir. 2005). His motion should be denied.

III. <u>Defendants' Motion To Dismiss</u> (Docket No. 24)

Defendants argue that this action should be dismissed because plaintiff lacks standing to challenge the residency requirements imposed by Jessica's Law and the restrictions on his parole imposed because he must register as a sex offender under California Penal Code

§ 290. They also argue that the challenges to Jessica's Law should be stayed under the doctrine of <u>Pullman</u> abstention if not dismissed.

### A. Standards On A Motion To Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true the allegations of the complaint in question, <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S. Ct. 2197 (2007), and construe the pleading in the light most favorable to the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" <u>Erickson</u>, 127 S.Ct. at 2200. Although a motion to dismiss is generally decided on the pleadings only, "[a] court may, . . ., consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." <u>United States v. Ritchie</u>, 342 F.3d 903, 907-08 (9th Cir. 2003).

### B. Background

On November 7, 2006, California voters approved Proposition 83, known as "Jessica's Law," which amended many provisions of California's Penal Code. Among the amendments was an addition to Penal Code Section 3003.5, which restricts residence locations

/////
/////
/////
/////

4

for parolees who must also register as sex offenders under Penal Code section 290; the provision at issue provides:

> Notwithstanding any other provision of law, it is unlawful for any person for whom registration is required pursuant to Section 290 to reside within 2000 feet of any public or private school, or park where children gather regularly.

Cal. Penal Code § 3003.5(b).

Subdivision (a) of the statute, which was not amended by Jessica's Law, provides that the residence restriction contained in that subdivision applies only "when a person is released on parole after having served a term of imprisonment in state prison for any offense for which registration is required pursuant to Section 290. . . ." Cal. Penal Code § 3003.5(a).

Penal Code section 3008[2] gives the California Department of Corrections and Rehabilitation (CDCR) the authority to "place any . . . parolee convicted of an offense that requires him or her to register as a sex offender pursuant to Section 290 who is on active supervision on intensive and specialized supervision and require him or her to report frequently to designated parole officers." Before September 19, 2006, the requirement of intensive supervision applied only to "all parolees under active supervision and deemed to pose a high risk to the public of committing violent sex crimes . . . ." Penal Code § 3005(a) (2006).

In the California Administrative Code, "high control" means "the highest supervision category of a person on parole" based on commitment offense and prior criminal history and requires the "high control" parolee to have face-to-face contact with his parole agent by the first working day following release, one field contact at the parolee's residence, and at least one drug test per month, among other things. 15 Cal. Code Regs. §§ 3000, 3504(a)(1)(A)-(D). Cases designated as high control "shall be reserved for persons with violent felony

/////

---

[2] This section's designation was changed from 3005 to 3008 in 2007.

5

commitments . . . PC section 290 registrants; cases generating extensive media or public attention; or cases involving membership in gangs. . . ." 15 Cal. Code Regs. § 3504(a)(1).

In 1987, plaintiff was convicted of indecent exposure in violation of Penal Code section 314.1. He received a misdemeanor term of six months in jail, and was thereafter required to register under section 290. Am. Compl. at 3 & Ex. 2. In 2005, he was convicted of possession of a controlled substance, sentenced to a term of two years, and paroled in March 2006. Id. at 3 & Ex. 1. It appears that plaintiff has been paroled and returned to prison at least once on a parole violation. Id., Ex. 5; see also Docket Nos. 20, 61, 67 (notices of change of address).

Plaintiff alleges that before he was paroled in October 2007, he was required to sign a special condition of parole, acknowledging the residence restrictions of Penal Code section 3003.5. Id. at 4 & Ex. 3. In addition, because of his status as a section 290 registrant without a fixed address, he was required to report to the parole officer daily until he secured a stable residence. Moreover, he was subject to eight restrictive conditions of parole, including a nightly curfew, a prohibition against contacting the victim of his crime and associating with other sex offenders, participation in psychological counseling and a requirement that he carry his section 290 registration card with him. Id. at 5-6 & Exs. 4, 6.

C. Standing

The requirement that a party have "standing" to bring an action is part of the case-or-controversy provisions of Article III of the Constitution. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). There are three elements:

> First, the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] independent action of some third party not before the court. Third it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision.

Id. (internal quotations & citations omitted). When a plaintiff seeks injunctive and declaratory

relief against a state agency, he must also show "a very significant possibility of future harm." Stevens v. Harper, 213 F.R.D. 358, 367 (E.D. Cal. 2002).

> Thus, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

It is plaintiff's burden to establish his standing to sue "for each challenge he wishes to bring and each form of relief he seeks. To survive a Rule 12(b)(6) motion to dismiss, [plaintiff] must allege facts in his [complaint] that, if proven, would confer standing upon him." Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 771 (9th Cir. 2006), cert. denied, 549 U.S. 1338 (2007). This court need not accept "allegations of future injury which are overly generalized, conclusory, or speculative." Stevens, 213 F.R.D. at 370. It must evaluate the question of standing "as of the date the complaint was filed." Sacks, 466 F.3d at 774.

### 1. Residency Requirements (Section 3003.5)

Defendants argue that plaintiff lacks standing to challenge the application of section 3003.5 because plaintiff secured a stay of that law's enforcement from the Butte County Superior Court. In support of this contention, defendants have presented copies of plaintiff's petition for a writ of habeas corpus filed in Butte County Superior Court and the Superior Court's order. In that petition, assigned number CM019056, plaintiff argued that the residency restrictions of Jessica's Law were applied to him improperly because he was not on parole for a

/////
/////
/////
/////
/////

sex offense, but rather for a drug offense. Def'ts' Req. For Judicial Notice (RJN), Ex. H. On January 29, 2008, the Butte County Superior Court ordered as follows:

> 1. Application and enforcement of section 3003.5(b) of the Penal Code (i.e., the Residency Restriction in Proposition 83) is temporarily stayed as to Boman only, pending the California Supreme Court's determination of related issues pending before it in the cases titled In re E.J., and denominated as Supreme Court Case Nos. S156933, S157631, S157633 and S157634.
>
> 2. CDCR shall inform the Court promptly following the Supreme Court's ruling in the aforementioned cases.

Id., Ex. I at 2.[3] The court takes judicial notice of these records. Shaw v. Hahn, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) (taking judicial notice of state court records for collateral estoppel purposes).

Plaintiff argues that his Butte County habeas action has been dismissed, but then appears to concede that "the only thing pending is the 'temporary' stay order." See Supp. Opp'n (Docket No. 48) at 9. He then says the residence restriction applied to him when he was released on parole in November 2007 and notes that the Butte County order was not issued until January 2008. Id. at 11.

Neither side has provided authority and the court has found none discussing the impact of the temporary stay on plaintiff's standing to maintain his challenge to the residence requirements. Nevertheless, although the analogy is not perfect, the court turns to those cases that have considered standing in the context of a challenge to a criminal statute.

/////
/////
/////
/////

---

[3] The cases denominated In re E.J., cited by the state court and currently pending in the California Supreme Court, challenge the residency restrictions of Jessica's Law in circumstances similar to that presented by this case. RJN, Ex. A (habeas petition).

8

In <u>Babbitt v. United Farm Workers National Union</u>, 442 U.S. 289 (1979), the Supreme Court observed:

> When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief. But persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs. When plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court.

<u>Id</u>. at 298-99 (internal citations, quotations omitted). In this case, plaintiff has alleged that CDCR has asked him to sign an acknowledgment that the residency restrictions of Jessica's Law apply to him and that Chico, the city to which he will parole, is home to a large park, which makes it difficult for him to find a compliant place to live. The Butte County stay does remove the possibility of immediate enforcement, but only temporarily. Should <u>In re E.J.</u> be decided adversely to plaintiff's interests, he will again face the possibility if not the likelihood the statute will be enforced against him.

In <u>Jacobus v. Alaska</u>, 338 F.3d 1095, 1098 (9th Cir. 2003), plaintiff challenged Alaska's limitations on contributions to political parties. During the pendency of the litigation, the Alaska legislature repealed two of the challenged provisions. However, under Alaska law a person may be prosecuted for past violations of a criminal statute that has been repealed; plaintiffs had violated the provisions capping contributions from individuals. <u>Id</u>. at 1102, 1104. The Alaska Public Offices Commission (APOC) notified one plaintiff that "it would not pursue any enforcement action during the pendency of the litigation." <u>Id</u>. at 1104. Because of the possibility that the plaintiff would be prosecuted if the federal court rejected plaintiff's challenge, this temporary reprieve from prosecution did not render the action moot. <u>Id</u>.

/////

/////

1         The stay in this case is similar to the APOC's reservation of the right to prosecute: if the Supreme Court decides <u>In re E.J.</u> adversely to plaintiff's position, the Butte County stay will evaporate and plaintiff will be subject to parole violation if he does not find satisfactory housing. It matters little that <u>Jacobus</u> considered mootness rather than standing:

> The "personal stake" aspect of mootness doctrine also serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving. One commentator has defined mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973).

<u>U.S. Parole Commission v. Geraghty</u>, 445 U.S. 388, 397 (1980); <u>see also</u> <u>Daimler Chrysler Corp. v. Cuno</u>, 547 U.S. 332, 352 (2006) ("The doctrines of mootness, ripeness, and political question all originate in Article III's "case" or "controversy" language, no less than standing does."). Accordingly, the court finds that the stay, because it is temporary, does not deprive plaintiff of standing to bring this suit.

        2. <u>Special Parole Conditions And High Control</u>

        Defendants also argue in essence that plaintiff does not have standing to challenge the two additional aspects of his release on parole because his allegations of harm from the imposition of the eight special conditions and high control parole status under section 3008 are conclusory. MTD at 9. Plaintiff counters that the application of the more onerous conditions, in violation of his constitutional rights, gives him standing to raise the challenge. <u>See</u> Supp. Opp'n (Docket No. 48) at 20, 28.

        In <u>McCall v. Dretke</u>, 390 F.3d 358 (5th Cir. 2004), the plaintiff alleged that the defendants violated his rights relying on a new method to calculate parole release under the authority of a statute that had been enacted after the inmate's latest offense. The state argued that

/////

/////

the inmate had not alleged a sufficient injury in fact because he was still in prison and not yet eligible for the mandatory supervised release (MSR). The court disagreed:

> Since McCall filed his federal habeas petition on December 7, 2002 and his projected MSR date was not until June 11, 2004, he was not eligible for MSR when he filed his petition. However, the Board had earlier informed McCall that it had discretion to decide whether to grant him MSR. The harm asserted by McCall is the allegedly *ex post facto* application of § 508.149, which makes McCall's MSR discretionary, not the actual denial of MSR. Therefore, the harm to McCall became "actual" as soon as the Board indicated that his MSR was discretionary. Thus, the application of § 508.149 to McCall's case is not conjectural or hypothetical.

Id. at 362. In this case, the harm to plaintiff became actual when he signed the special conditions of parole. Am. Compl., Ex. 6; see also Armstrong v. Davis, 275 F.3d 849, 861 (9th Cir. 2001) (standing may be shown when the injury stems from a written policy); compare Hartman v. Summers, 120 F.3d 157 (9th Cir. 1997) (plaintiff lacked standing to challenge release procedures for persons committed after insanity acquittal when plaintiff had not begun the procedure leading to release).

### 3. Pullman Abstention

Defendants have not argued that Pullman abstention is applicable to plaintiff's challenge to the special conditions of parole or to his designation as a "high control" parolee. However, they argue that his challenges to the residence restrictions of Jessica's Law should be stayed in light of a case pending in the California Supreme Court.

On October 4, 2007, a habeas petition was filed in the California Supreme Court, challenging the "draconian provision of Proposition 83 . . . that will force Petitioners to make an unlawful and unconscionable choice between leaving their home [sic]. . . becoming homeless or

/////
/////
/////
/////

11

violating a newly added condition of parole that will result in their imprisonment for a parole violation." Docket No. 26 , Ex. A at 1 & Ex. C. Counsel for the petitioners describe them as

> four parolees, all subject to registration under Section 290. None of the Petitioners is currently on parole for the sex offense underlying their Section 290 registration. Petitioners were all released from a parole violation term after passage of the law. Petitioners were all informed on or shortly after August 17, 2007, that their residence was not in compliance with the residency restrictions of section 3003.5, subdivision (b).

Id., Ex. A at 7. The circumstances of one of the group of the petitioners are similar to plaintiff's:

> Petitioner J.S. is on parole . . . for a non-sex offense for which he was released on parole in March, 2006. J.S. must register under section 290 because of an indecent exposure citation he received in 1985 for urinating under a railroad trestle. After informing J.S. that he was not in compliance with section 3003.5, subdivision (b), DAP) cut off J.S.'s cash assistance that helped him pay rent.

Id. This litigation, In re E.J., Case No. S156933, raises constitutional challenges to the residency requirements of Jessica's Law and seeks a ruling that the provisions do not apply to those parolees who are required to register but who are not on parole for a registerable offense. Id., Ex. A at 10.

Under Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), the Supreme Court recognized that in certain circumstances, a federal court should abstain from adjudicating an action when certain conditions were present. The Ninth Circuit has found Pullman abstention appropriate when three factors are met:

> (1) The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.
>
> (2) Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.
>
> (3) The possibly determinative issue of state law is doubtful.

Smelt v. County of Orange, 447 F.3d 673, 679 (9th Cir.), cert. denied, 549 U.S. 959 (2006).

/////

The complaint in this case "touches a sensitive issue of social policy," for it seeks to involve the federal court in state decisions involving appropriate placement of parolees, based on policies adopted by the electorate. This factor thus supports abstention. L.H. v. Jamieson, 643 F.2d 1351, 1355 (9th Cir. 1981) (abstention appropriate when "appellants propose interjecting the federal courts into issues affecting the proper care of juveniles held in state custody"). Moreover, if the California Supreme Court rules that Jessica's Law does not apply to parolees like the petitioners in that action or like the plaintiff in this case – those required to register but whose parole stems from a non-registerable offense – plaintiff's ex post facto and due process claims would evaporate.

The pendency of an action that may resolve the issues in this case purely on grounds of state statutory construction counsels abstention. As the United States Supreme Court has recognized:

> Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim, we have regularly ordered abstention.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Among the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law. If the state courts would be likely to construe a statute in a fashion that would avoid the need for a federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong.

Harris County Commissioners Court v. Moore, 420 U.S. 77, 83, 84 (1975); see also Rivera-Feliciano v. Acevedo-Vila, 438 F.3d 50 (1st Cir. 2006) (abstention appropriate in challenge to change in parole conditions when there were "a number of unresolved issues of . . . administrative and statutory law which would inevitably shape the nature of the federal claims.") A resolution of In re E.J. on purely statutory grounds would have a significant impact of this litigation.

/////

13

1    Petitioner argues that the third Pullman factor is not supported because the
2 determinative issue of state law is not doubtful. Docket No. 48 at 31. He argues that the two
3 subdivisions of section 3003.5 should be read together and that when they are, it is clear that the
4 only parolees subject to Jessica's Law, Proposition 83, are those who are on parole for the
5 registerable offenses. He cites no law for his construction, apart from California case law and
6 statutes generally concerning the prospective application of statutes. While this court has no
7 quarrel with these general principles of law, they do not conclusively answer the question
8 whether the statute applies to those who were released on parole for any reason after the passage
9 of the initiative.

10    Plaintiff also relies on Judge Karlton's decision in Doe v. Schwarzenegger, 476
11 F.Supp.2d 1178, 1181 n.4 (E.D. Cal. 2007), in which the judge declined to abstain when
12 presented with a challenge to Jessica's Law because he did not find the question of state law
13 uncertain. In that case, however, the parolees were on parole at the time the initiative passed.
14 Id. at 1179. The judge relied on the law, cited here by plaintiff, that penal statutes in California
15 apply prospectively only. Id. at 1181-82. The resolution of the instant case is not similarly
16 clear. Accordingly, the court finds abstention appropriate.

17 IV. Requests For Judicial Notice (Docket Nos. 52, 65, 73)

18    Plaintiff and defendants have requested that the court take judicial notice of an
19 amicus brief plaintiff filed in the California Supreme Court in the case of In re E.J. See Docket
20 Nos. 52 & 65. Defendants argue this brief supports their argument for Pullman abstention with
21 respect to plaintiff's challenge to the residency restrictions of section 3003.5, while plaintiff
22 appears to suggest the brief may be considered as additional support for his complaint and his
23 opposition to the motion to dismiss. In addition, plaintiff asks the court to take "judicial notice"
24 of the fact that defendants have not addressed his "high control" allegations in the motion to
25 dismiss. Docket No. 73.
26 /////

The court grants defendants' motion for judicial notice of the brief. Insofar as plaintiff is using the opportunity to advance additional arguments, the court declines to grant plaintiff's request for such a use as improper. Plaintiff has been given an opportunity to pursue his amended complaint and to file an opposition to the motion to dismiss. Should he continue to file additional materials not clearly related to any currently pending motion or outside the time limits for filing or opposing motions, he may be subjected to sanctions, including a limit on the number of documents he may file in a given time period. Briones v. Riviera Hotel & Casino, 116 F.3d 379, 382 (9th Cir. 1997); Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986) (pro se status does not excuse party from following court rules); De Long v. Hennessey, 912 F.2d 1144, 1147 (9th Cir. 1990) (availability of sanctions).

V. Motions To Amend And Clarify (Docket Nos. 53 & 56)

Plaintiff filed a motion "to expand upon the relief in the complaint," essentially asking the court to publish any orders issued in this case to set "serious boundaries" for the CDCR. Docket No. 53 at 2. He also asks to be allowed to amend the complaint, apparently to ask for damages and costs. Docket No. 53 at 4.

Plaintiff further asks leave to "make sure the Court as well as the defense counsel understands that High Control is a separate issue from Specialized Intensive . . . Supervision (PC 3008). Docket No. 56.

Thereafter, he filed a request to withdraw these two requests. Docket No. 72. This last request will be honored.

Notwithstanding his request to withdraw, in Docket No. 77, filed allegedly in reply to defendants' comments about Docket No. 56, plaintiff again addresses the issues raised in the motion to dismiss. This is improper. Again, plaintiff is warned that should he persist in filing more than one response to any motion, he will be subject to sanctions, which may include filing restrictions or even dismissal.

/////

VI. Motion For Ruling On Prospective Application Of The Penal Statutes (Docket No. 35)

Plaintiff "requests this Court to please inform him as to wether [sic] Penal Code section 3003.5(b), Penal Code 3005 and Penal Code 3053[4] apply prospectively or retrospectively as is his right." Docket No. 35 at 1. While this issue may be determined during the course of the litigation, plaintiff has no "right" to demand that the court resolve an issue of law outside of established motion practice. Plaintiff is again cautioned to follow the rules of procedure or face potential sanctions.

VII. Motion For Ruling On Question Of Law (Docket No. 68)

Plaintiff asks to withdraw this request. Docket No. 87. This wish too will be honored.

VIII. Requests For Legal Materials (Docket Nos. 45 & 86)

Plaintiff has filed two requests, asking the court to order the defendants to return his legal materials and to provide him with supplies and law library access so he may pursue his litigation. In the latter motion, he alleges that the person behind these deprivations is Legal Officer Reyes. Docket No. 86 at 2.

In essence, plaintiff seeks injunctive relief against a person who is not named as a defendant in this case, which the court will not order. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969). The court will ask counsel for the defendants to make inquiries about plaintiff's access to his legal materials and supplies and to report to the court by letter within thirty days of the date of this order.

IX. Requests For Injunctive Relief (Docket Nos. 55 & 74)

On December 3, 2008, plaintiff filed a motion for a preliminary injunction to enjoin the enforcement of "high control" conditions of parole and the eight special conditions

---

[4] Section 3053 gives the Board of Prison Terms the authority to impose "any conditions that it may deem proper" when it grants parole; it also specifically provides that the Board may order a parolee to undergo testing for tuberculosis.

16

which, he alleges, have been imposed based on his twenty-year old conviction subjecting him to sex offender registration under California Penal Code section 290 even though his current incarceration stems from a drug offense. He alleges that his parole was violated and he was returned to prison in part because he violated conditions imposed as a consequence of his section 290 registration. He further alleges he will be subject to the same conditions when released after serving his current parole violation term. See Docket No. 55; see also Docket Nos. 59, 84.

His second motion, filed December 30, 2008, and supplemented on January 8, 2009, raises many of the same contentions. Docket Nos. 74, 81.

Defendants oppose both motions. Docket Nos. 63, 88.

The legal principles applicable to a request for preliminary injunctive relief are well established. "The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff and (4) advancement of the public interest (in certain cases)." Dollar Rent A Car v. Travelers Indem. Co., 774 F.2d 1371, 1374 (9th Cir. 1985). The criteria are traditionally treated as alternative tests. "Alternatively, a court may issue a preliminary injunction if the moving party demonstrates 'either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.'" Martin v. International Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984) (quoting William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86, 88 (9th Cir. 1975) (emphasis in

/////
//////
/////
/////
/////
/////

original)). The Ninth Circuit has reiterated that under either formulation of the principles, if the probability of success on the merits is low, preliminary injunctive relief should be denied:

> Martin explicitly teaches that "[u]nder this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits."

Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) (quoting Martin, 740 F.2d at 675).

Generally, "[a] prohibitory injunction preserves the status quo. A mandatory injunction goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored." Stanley v. University of Southern California, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal quotations, citations omitted). Plaintiff argues what the status quo should be: his parole conditions should reflect only his current commitment offense for drug possession. However, despite plaintiff's protest, the status quo in this case at this time is that he is subject to additional conditions of parole and intensive supervision based on his status as a section 290 registrant. Accordingly, what he seeks is a mandatory injunction, which may be issued only upon a finding that the facts and law clearly favor him. Id. Plaintiff has not made that showing. Compare Connecticut Department of Public Safety v. Doe, 538 U.S. 1 (2003) (requirement that sex offenders register not subject to due process hearing); Smith v. Doe, 538 U.S. 84 (2003) (Alaska sex offender registration law non-punitive and so requiring registration even though offense occurred before enactment was not an ex post facto violation); United States v. Jackson, 189 F.3d 820 (9th Cir. 1999) (imposing mandatory drug testing as condition of supervised release did not violate ex post facto clause although conviction occurred before enactment); Artway v. Attorney General of the State of New Jersey, 81 F.3d 1235 (3d Cir. 1996) (sex offender registration did not violate ex post facto, double jeopardy, equal protection or due process clauses) with Coleman v. Dretke, 395 F.3d 216 (5th Cir. 2004) (imposing sex offender treatment requirements on one never convicted of sex offense without notice or hearing violated due process).

IT IS THEREFORE ORDERED that:

1. Plaintiff's motion to disqualify the undersigned (docket no. 60) is denied; however plaintiff's request to withdraw his consent is granted and the consent to the undersigned filed October 19, 2007 (docket no. 4) is deemed withdrawn;

2. Plaintiff's motion for summary judgment (docket no. 32) is denied without prejudice;

3. Defendant's Requests for Judicial Notice (docket nos. 26 & 65) are granted as described in the body of the order;

4. Plaintiff's requests for judicial notice (docket nos. 52 & 73) are denied;

5. Plaintiff's request to withdraw docket numbers 53 and 56 (docket no. 72) is granted and docket numbers 53 and 56 are withdrawn;

6. Plaintiff's motion for a ruling on the prospective application of the laws (docket no. 35) is denied;

7. Plaintiff's request to withdraw his motion for ruling on a question of law (docket no. 68) is granted and docket number 68 is withdrawn; and

8. Counsel for the defendants is directed to file a letter, within thirty days of the date of this order, reporting on the progress of plaintiff's attempts to secure access to his legal materials and legal supplies.

IT IS THEREFORE RECOMMENDED that:

1. Defendants' motion to dismiss or to stay (docket no. 24) be granted as to plaintiff's challenge to the residence restrictions of Jessica's Law (Penal Code § 3003.5) and that the challenge to those restrictions be stayed, but denied in all other respects;

2. Plaintiff's requests for access to the law library, legal supplies and his legal materials (docket nos. 45 & 86) be denied; and

3. Plaintiff's motions for injunctive relief (docket nos. 55 & 74) be denied.

//////

1   These findings and recommendations are submitted to the United States District
2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3 days after being served with these findings and recommendations, any party may file written
4 objections with the court and serve a copy on all parties.  Such a document should be captioned
5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6 shall be served and filed within ten days after service of the objections.  The parties are advised
7 that failure to file objections within the specified time may waive the right to appeal the District
8 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
9 DATED: March 23, 2009.

_____
U.S. MAGISTRATE JUDGE